IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JACKIE MORRIS                                    CV 08-382-MA

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

TIM WILBORN
Wilborn Law Office
P.O. Box 2768
Oregon City, Oregon
(503) 632-1120

       Attorneys for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
MATHEW W. PILE
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3760

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Jackie Morris seeks judicial review of the
Commissioner's final decision denying her June 30, 2004,
application for supplemental security income (SSI) benefits under
Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

     Plaintiff previously applied for and was denied SSI benefits
in 1993, 1996, 1999, and June 1, 2004.  Accordingly, there is a
continuing presumption of non-disability that plaintiff may rebut
by showing that her condition has worsened since the most recent
denial.  Taylor v. Heckler, 765 F.2d 872, 875 99th Cir. 1985).

     In the pending application, Plaintiff alleges she is
disabled because of depression, sleep disorders, arthritis in the
spine, and fibromyalgia.  Her claim was denied initially and on
reconsideration.

     On February 6, 2007, the Administrative Law Judge (ALJ)
conducted an evidentiary hearing and on May 23, 2007, issued a
decision that plaintiff is not disabled.  On January 30, 2008,

the Appeals Council denied plaintiff's request for further review.  The ALJ's decision, therefore, was the Commissioner's final decision for purposes of judicial review.

Plaintiff now seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the payment of benefits.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff did not engage in substantial gainful activity since June 1, 2004, the alleged onset date of her disability.

At Step Two, the ALJ found that plaintiff has severe impairments of status post-cervical surgery and fibromyalgia, history of cervical stenosis, and degenerative arthritis.

At Step Three, the ALJ found these impairments do not meet or equal the requirements of any Listed Impairment.

The ALJ found plaintiff has the residual functional capacity

to perform a light level of physical exertion, at which she must be able to change positions every 30-45 minutes and not need to perform complex tasks, climb, or engage in or perform frequent overhead activities.

At Step Four, the ALJ found that plaintiff is able to perform her past relevant work as a coat checker or magazine delivery person.

Despite his Step Four finding, the ALJ proceeded to Step Five and found plaintiff was able to perform a significant number of other jobs that exist in the national economy, including telephone survey worker and Cashier II.

Consistent with the above findings, the ALJ found plaintiff is not disabled and denied her claim for disability insurance benefits.

The Commissioner now concedes that the ALJ's finding at Step Four was erroneous because the jobs of coat checker and magazine delivery person did not qualify as past relevant work. The ultimate issue, therefore, is whether the ALJ's finding at Step Five is supported by substantial evidence.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet

this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

5  - OPINION AND ORDER

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

The issues are whether the ALJ erred (1) in not giving clear and convincing reasons for rejecting plaintiff's testimony as to the severity of her symptoms, (2) in relying on erroneous vocational evidence, (3) in failing to address whether plaintiff is able to work full-time, (4) in failing to address the job base in light of the fact that plaintiff was 54 years old on the date of the Commissioner's final decision, and (5) in failing to consider plaintiff's obesity and depression.

## PLAINTIFF'S EVIDENCE

Plaintiff's evidence is drawn from her application for disability benefits, her hearing testimony on February 6, 2007, and her work history reports.

Plaintiff was 53 years old on the date of the last hearing. She is married and has one son. She has a high school diploma and one year of college. She drives approximately twice a week. She last worked delivering magazines one day a week for two and

6 – OPINION AND ORDER

one-half months in 2000.  She stopped working because of neck pain.  Before that she performed general office work for a construction company.  It ended when the company went out of business.  Her pain was getting worse at the time, causing her to miss a day of work every two weeks.

Plaintiff underwent a cervical fusion in 2000 that relieved some but not all of the pain in her back.  She has pain from her mid-back to the base of her skull or higher.  She still has headaches but they are not as intense as before the surgery.  She has "massive throbbing headaches" two or three times a week where the pain is indescribable.

Plaintiff has difficulty sleeping and gets up early and "hangs out."  Her husband does most of the housework because her back pain and numbness down to her fingertips cause her to get sick to her stomach.  She is "drugged out" trying to control the pain.

Plaintiff occasionally drives and has friends over to the house two-three times a week.  They will take her out for a drive and go up to the woods.

Plaintiff has not tried to return to work because pain causes her to lay down two to three times a day.  She does not believe she would be able to do that in a work environment.

She is only able to use her home computer for 10-15 minutes before she starts to feel pain in her back at the base of her

neck.  The pain prevents her from sewing quilts, sleeping on her left side, and reading a book for more than 10 minutes.

Plaintiff is able to sit for 15-20 minutes.  She then has to stand up and stretch because of pain caused by a herniated disc in her tailbone.  She rejected her doctor's advice to have a MRI for the purpose of examining the disc.

Plaintiff takes hot baths during the day to relieve her pain and sits on a small padded rocker.  She has a heating pad with her at all times.  She takes Trazadone and Lexapro to help her sleep.

Plaintiff is depressed and feels sad and helpless because she is not able to go to church and to social events as she did in the past.  She has more bad than good days.

### RELEVANT MEDICAL EVIDENCE

a.  **Medical Treatment**.

Mercy Medical Center.

In June 2002, plaintiff complained of gallstones with abdominal pain and nausea, particularly after she ate fatty foods. She was referred to a surgeon for a possible removal of the gall bladder.  The record does not reflect she had such an operation.

Plaintiff also complained of hand and arm numbness and neck stiffness that caused her to have decreased range of motion when she drove.

8  - OPINION AND ORDER

In October 2002, plaintiff complained of diffuse bone pain. She requested a form to be sent to utility company advising them that she suffers from severe cervical spondylosis and that she needed an extension of time to pay her utility bill.

In December 2002, plaintiff complained of left shoulder and upper back pain with paresthesia. She was not in any acute discomfort. She was tender in the upper thoracic spine but had no obvious deformity. Her range of motion in the shoulder and her muscle strength were normal. An x-ray showed a "very, very slight scoliosis in the high thoracic spine, a minor bone spur and joint space narrowing at C6-7, and foraminal encroachment at C5-6 and C6-7."

In January 2003, plaintiff continued to complain of left shoulder pain and trapezius strain. She was referred for limited physical therapy and given a home exercise program. Over the next three weeks, she reported some relief from pain and was encouraged to continue with stretching exercises to strengthen her shoulder muscle.

On January 24, 2003, plaintiff requested a note of medical necessity to send to the telephone company because she could not pay her telephone bill. She continued to report progress in relieving her shoulder pain. She was diagnosed with arthritis.

In February 2003, plaintiff reported continued progress in

pain relief.  She found she did better if she limited some of her movements and did fewer chores to lessen her pain.

In February 2004, plaintiff complained of severe pain on the right side and pain in her neck.  In June 2004, she complained of paralysis while she was sleeping.  In November 2004, she was prescribed Naprosyn to treat chronic pain.

<u>James J. Hoyne, M.D. - Family Practice</u>.

In March 2004, plaintiff complained of right-side severe pain that lasted for a week.  She was diagnosed with a right rib muscle strain and was prescribed anti-inflammatory medication and ice.

In June 2004, plaintiff reported a bout of sleep paralysis. Dr. Hoyne suggested a sleep study might be necessary if it reoccurred.

In August 2004, plaintiff complained of nighttime shortness of breath and rapid heart beat.

In October 2004, following a sleep study, she was diagnosed with position dependent sleep apnea.  She complained of severe back pain, and it was thought the insomnia might be secondary to the back pain.

In November 2004, plaintiff complained of chronic neck and back pain which was thought to be secondary to arthritis, depression, and insomnia.  She was prescribed Darvocet and

Trazadone to help her sleep and Vicodin for pain relief.

In December 2004 and January 2005, plaintiff reported excellent results in her pain relief.  She was continued on Vicodin and Trazadone.  She had no other complaints or concerns.

In May 2005, plaintiff stopped taking Vicodin because it was making her sick.  She feels better not taking it.  She had no other complaints.

In August 2005, plaintiff complained of neck pain radiating into the shoulders, causing numbness and tingling in both arms and shoulders.  A follow-up examination of the cervical spine showed very minimal tenderness.  She had pain in the trapezius and shoulder blade muscle.  The diagnosis was cervical strain and fibromyalgia.

In February 2006, plaintiff complained of a herniated disc she suffered after giving birth 19 years earlier.  She had no reproducible tenderness or obvious scoliosis in the lower back. She exhibited pain in her leg on straight-leg raising and breakaway weakness to dorsiflexion on the right side of her foot.

In March 2006, plaintiff noted considerable improvement in her lumbrosacral pain.  Three months later, she was doing well but needed a refill of Trazodone.

 In October 2006, plaintiff saw Physician Assistant Paul Fieber in Dr. Hoyne's office for a follow-up examination

11 - OPINION AND ORDER

regarding her complaints of fibromyalgia and depression.  Her medication was helping her sleep and she had no acute distress.

In January 2007, in a follow-up visit, she described some stress related to family issues and occasional tightness in her chest in the upper shoulder area.  Otherwise, she was in no acute distress.

**b.    Medical Examination.**

Warren A. Kadas, MD. - Family Practice.

In September 2004, Dr. Kadas examined plaintiff at the request of Disability Determination Services (DDS) regarding her complaints of back, neck, and leg pain, fear of pain, depression, and memory problems.  He described plaintiff as well-developed, obese, and in no acute distress.  She exhibited no complaints on testing of muscle strength and neck movements.  She had a strong grip and full range of motion.  Neurological testing was normal. Her subjective complaints did not match her objective findings. Dr. Kadas opined plaintiff had no physical limitations of function.

**c.    Medical Consultation.**

Martin Kehrli, M.D. - Palliative Medicine.

In October 2005, Dr. Kehrli  reviewed plaintiff's medical records and concluded plaintiff was capable of more than the light work found by the ALJ.

d.  **Mental Health Treatment**.

<u>Douglas County Mental Health</u>.

On May 19, 2004, after she was "turned down for SSI," plaintiff sought treatment for "a lot of phobias she has never discussed before."  She was afraid of being alone with men, including her husband, and leaving "her own comfort zone."  She was also afraid of having other surgeries and did not want to seek medical treatment.  Thereafter, she kept one follow-up appointment to discuss medications and missed the remainder of scheduled appointments.  Plaintiff's care was terminated on July 15, 2004, with an annotation in a chart note that her prognosis was "fair" and that she was a "long term repeat user of mental health when she is in crisis, but does not follow thru with treatment."  Plaintiff was assigned the same GAF score of 60 (moderate difficulty in social and occupational functioning) when she began treatment and when it was terminated.

On July 3, 2007, plaintiff returned, seeking mental health treatment for her depression and anxiety.  On the initial interview, plaintiff was diagnosed with an "Adjustment Disorder, mixed."  She was assigned a GAF score of 50 (serious impairment in social and occupational functioning).

On July 23, 2007, plaintiff did not appear to be depressed and reported her anxiety level at 3 on a scale of 1-10.  She appeared to be "very indecisive and afraid to make a mistake."

Allan R. Kirkendall, Ph.D., - Psychologist.

In September 2004, Dr. Kirkendall examined plaintiff on behalf of the Commissioner regarding her complaints of depression, fear, and memory problems. He opined plaintiff has episodes of depression that may lower her motivation to seek employment. He assigned a GAF score of 70 (mild symptoms with some difficulty in social and occupational functioning).

**e.    Mental Health Consultation.**

Bill Hennings, Ph.D. - Psychologist.

In October 2004, Dr. Hennings reviewed plaintiff's medical records and concluded she has a mild disorder due to chronic pain with depressive features. She would have mild difficulty maintaining concentration, persistence, or pace, but no other functional limitations caused by any mental disorder.

**f.    Vocational Evidence.**

The ALJ asked the vocational expert to opine as to whether there were sedentary and/or light jobs in the national economy that plaintiff could perform if she needed to (1) change positions between sitting and standing after 30-45 minutes, (2) avoid complex tasks, because of her complaints of pain or fatigue, and (3) avoid climbing or frequent overhead activity. The vocational expert opined plaintiff could performs the jobs of Telephone Survey Worker and Cashier II.

14 - OPINION AND ORDER

## ANALYSIS

**a.    Rejection of Plaintiff's Testimony.**

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting her testimony regarding the severity of her impairments.  I disagree.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the

claimant's reputation for lying, prior inconsistent statements
concerning the symptoms, and other testimony by the claimant that
appears less than candid; (2) an unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily activities.
Id. at 1284 (citations omitted).

     Plaintiff argues that there is no specific evidence of
malingering and, in the absence of such evidence, the ALJ
improperly failed to credit her testimony regarding the severity
of her physical and mental impairments.

     The ALJ found the objective medical findings "do not support
the degree of restriction" plaintiff alleges.  Although the ALJ
found the medical evidence "could reasonably be expected to
produce plaintiff's alleged symptoms," the ALJ concluded "her
statements concerning the intensity, persistence, and limiting
effects of these symptoms are not entirely credible."  The
medical record amply supports that conclusion.

     Specifically, the ALJ found that the objective findings as
to specific mental impairments were so minimal that no severe
overall mental impairment was established.  Dr. Kirkendall's
psychological evaluation indicated only mild difficulties in
social and occupational functioning and contradicted plaintiff's
testimony regarding the severity of her mental impairments.  The

ALJ also noted plaintiff's "apparent disinterest" in seeking mental health treatment, as reflected by Douglas County Mental Health chart notes in May 2004 indicating plaintiff's mental health treatment program was terminated because of her repeated missed appointments.

The ALJ also considered plaintiff's misleading statement to Dr. Kirkendall that she had undergone multiple back surgeries despite the lack of any evidence in the medical record to support that statement.

Finally, the ALJ took into account Dr. Kadas's report that plaintiff's physical examination was normal.  Although the ALJ gave plaintiff the benefit of the doubt in assigning her some physical restrictions that would support an ability to perform light work only, the ALJ's opinion did not undermine or reject Dr. Kadas's actual objective findings during the physical examination.

On this record, I conclude the ALJ gave clear and convincing reasons for not crediting in full plaintiff's testimony regarding her physical and mental impairments, and purported limitations related to them.

**b.    Reliance on Erroneous Vocational Evidence.**

Plaintiff contends the Vocational Expert (VE) erred in opining that plaintiff could perform the jobs of Telephone Survey

Worker and Cashier II because those jobs involve complex tasks, which plaintiff is unable to perform.  I disagree.

The Commissioner points out that both of those jobs may be performed by employees with a GED reasoning level of 3, which involves "a commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."  Dictionary of Occupational Titles (DOT) #205.367-054 (Cashier II) and #211.462-010 (Telephone Survey Worker).  I agree with the Commissioner that the intellectual requirements for these jobs fall well within plaintiff's mental capacity.

**c.**   **Plaintiff's Ability to Perform Full-Time Work**.

Plaintiff contends there is no evidence in the record to support a finding that plaintiff is able to work eight hours a day, five days a week, month after month.  I disagree.

The ALJ properly refused to credit fully plaintiff's testimony regarding the degree of her physical and mental limitations and their alleged impact on her ability to work. The ALJ found plaintiff has the residual functional capacity to perform a light level of work with certain additional restrictions that did not include a reduction in the number of hours or days of the week plaintiff was able to work.

Plaintiff had the burden to present credible evidence that she is unable to work on a full-time basis.  See 20 C.F.R. §

416.912(c); 20 C.F.R. §416.945(a)(3)("In general, [the claimant] is responsible for providing the evidence [the Commissioner] will use to make a finding about [the claimant's] residual functional capacity.").

On this record, I conclude plaintiff did not present any substantial evidence that she is unable to work full-time given the specific limitations found by the ALJ.

d.   **The Occupational Job Base.**

Plaintiff is at least 50 years old and the jobs of Cashier II and Telephone Survey Worker that the ALJ found she is able to perform fall within the range of sedentary and light work. Accordingly, plaintiff contends the ALJ erred in failing to address specifically whether the occupational base for such jobs job was light or sedentary work.  I disagree.

If the jobs are sedentary, a finding of disability was mandated.  SSR 83-12.  The ALJ told the VE that he was interested only in the availability of light work, not sedentary work, for somebody with plaintiff's limitations.  The VE specifically identified the Cashier II as meeting that requirement.

On this record, I conclude the ALJ adequately addressed the occupational base and found that, although plaintiff was more more than 50 years old, there were substantial numbers of Cashier II jobs available in both the national and the Oregon economies that involve light work.

19 - OPINION AND ORDER

**e.    Failure to Fully Consider Plaintiff's Obesity and
Depression.**

Plaintiff contends the ALJ erred by failing to find
plaintiff's obesity and depression were severe impairments, when
considered either separately or in combination with her other
impairments.

In finding that plaintiff's obesity was not severe, the ALJ
relied in part on Dr. Kadas's finding that plaintiff could almost
touch the floor with her fingers when she bent over at the waist
despite her obesity.  Plaintiff contends this finding is
inconsistent with his ultimate rejection of Dr. Kadas's overall
opinion that plaintiff had no physical work limitations.  I
disagree.  The ALJ could reasonably accept Dr. Kadas's objective
finding as to one claimed limitation, _i.e._, plaintiff's obesity,
without accepting Dr. Kadas's overarching opinion based on a host
of other objective findings.

Plaintiff also argues the ALJ failed to take into account
Dr. Kirkendall's medical report, which, according to plaintiff,
suggests plaintiff's depression had a negative impact on her
physical ability to work.  I disagree.  Dr. Kirkendall found only
that plaintiff had mild depression (GAF score of 70) that, in and
of itself, would not prevent her from working but might "lower
her motivation" and, therefore, "may be a factor in her not even
attempting to look for work."

On this record, I conclude plaintiff's minimal physical impairments and mild depression do not add up to a disabling condition sufficient to preclude plaintiff from performing the light work jobs described by the ALJ.

## CONCLUSION

For all the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 17 day of July, 2009.


                              /s/  Garr M. King
                        for   MALCOLM F. MARSH
                              United States District Judge

22 - OPINION AND ORDER